ROBERT A. POWERS AND DIANNE E. POWERS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Powers v. Commissioner
Docket No. 3292-83.
United States Tax Court
T.C. Memo 1985-576; 1985 Tax Ct. Memo LEXIS 54; 50 T.C.M. (CCH) 1479; T.C.M. (RIA) 85576; November 26, 1985. Lyman T. Burgess, for the petitioners. Richard G. Convicer, for the respondent. CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: Respondent determined deficiencies in petitioners' 1979 and 1980 Federal income taxes in the amounts of $3,253.80 and $5,587.00, respectively. The issue for decision is whether petitioners are entitled *55 to a business or nonbusiness bad debt deduction. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners resided in Granby, Connecticut at the time they filed their petition in this case. From 1975 through 1978, Robert Powers, Jr. (petitioner) was president and chief executive officer of Powers Chevrolet, Inc. (Powers). Powers had 400 shares of common stock outstanding. Petitioner owned 100 shares and Gertrude Lawson, daughter of Robert Powers, Sr., owned 1 share. A trust, created under the will of Robert Powers, Sr., held the remaining 299 shares. Lucy Powers, the widow of Robert Powers, Sr., was the income beneficiary of the trust and, upon her death, petitioner was to receive the 299 shares. Petitioner advanced approximately $112,000, $208,000, and $155,000 to Powers in 1975, 1976, and 1977, respectively. Petitioner received a note on June 2, 1977 representing $42,000 of the 1977 advance. Powers paid petitioner a salary as follows: 1975
$16,960
1976
17,480
1977
9,100
1978
0 During 1979 and 1980, petitioner received $21,798.77 *56 and $28,015.99 respectively, as an employee of Scott Oldsmobile. Powers paid petitioner rental income in 1974 and 1975 for use of a building. Powers did not pay petitioner rental income in 1976, 1977, or 1978. In 1978, Powers sold its assets for $85,000 and the proceeds from the sale were distributed. At that time, the $42,000 debt Powers owed petitioner became worthless. On their 1979 income tax return, petitioners reported the loss arising from the $42,000 debt as a business bad debt. Petitioners used $21,432 of this loss in 1979. They used the balance of $20,568 in 1980. Respondent disallowed the business bad debt deduction and determined that the worthless loan was deductible only as a nonbusiness bad debt which became worthless in 1978. OPINION As a preliminary matter, we address respondent's contention that the debt became worthless in 1978 rather than in 1979. A bad debt deduction is allowed in the year in which the debt becomes worthless. Sections 166(a), (d)(1)(B). [1] The parties have stipulated that the debt became worthless in 1978. *57 To the extent that a carryover will affect the deficiencies in 1979 and 1980, we address the issue of whether petitioner should have claimed a business or nonbusiness bad debt deduction. See section 6214(b). A bad debt deduction will be characterized as business rather than nonbusiness if the debt bore a proximate relationship to the taxpayers' trade or business. Sec. 1.166-5(b)(2), Income Tax Regs. In determining whether this relationship is present, the proper measure is that of the taxpayer's dominant motivation; a significant motivation is not sufficient. United States v. Generes,405 U.S. 93, 103 (1972). Petitioner contends that he advanced the money to protect his salary and insure the payment of rental income. Respondent contends that petitioner advanced the money to protect his investment in Powers. In the present case, petitioner advanced approximately $475,000 to Powers from 1975 through 1977. His salary during this period was never more than $17,480 a year. In each of 1979 and 1980 he earned in excess of $20,000 as an employee of another automobile dealership.The disparity between the amounts advanced and petitioner's salary and his ability to *58 earn a greater salary elsewhere indicate that the advances were not made to protect his salary. [2]Davenport v. Commissioner,70 T.C. 922, 933 (1978). We also do not accept petitioner's argument that the advances were to secure the payment of rental income. Although petitioner received rental income in 1974 and 1975, he did not receive any rental income in 1976, 1977, and 1978. Futhermore, there was no evidence that Powers was the sole likely tenant of the building. We find that petitioner's dominant motivation in advancing the money was to protect his investment, as well as his expectancy from the trust under his father's will. Accordingly, petitioner's advances constitute non-business debts within the meaning of section 166(d). To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
2. See Pehlke v. Commissioner,T.C. Memo. 1978-254↩.